

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 9, 2024

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Marc Buckner*, 24 Cr. 380 (KPF)

Dear Judge Failla:

      The Government respectfully submits this letter in advance of the sentencing for defendant Marc Buckner, which is currently scheduled for October 16, 2024.  For the reasons set forth below, the Government respectfully submits that a sentence of imprisonment within the bottom half of the applicable U.S. Sentencing Guidelines (the "Guidelines") range of 18 to 24 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

      **I.**      **Background**

      NYCHA is the largest public housing authority in the country.  It provides housing to low- and moderate-income New York City residents and is funded in large part from the U.S. Department of Housing & Urban Development. (Presentence Report ("PSR") ¶ 13; *see generally* Dkt. 6 (background letter)).  From at least May 2013 through January 2024, the defendant was employed as a superintendent at various NYCHA housing developments in Manhattan.  (PSR ¶ 17).  As a superintendent, the defendant was involved in awarding construction and repair jobs to contractors seeking to be hired for work at NYCHA properties.  For jobs that were under a certain threshold (often referred to as "no-bid contracts"), the defendant could hire contractors directly without a competitive bid process or other oversight.  (PSR ¶¶ 13-15).  However, rather than awarding work to contractors based solely on merit, the defendant awarded no-bid contracts based on the payment of bribes.

      Between approximately 2013 and 2022, the defendant repeatedly accepted bribes from multiple NYCHA contractors in exchange for awarding no-bid repair contracts at the NYCHA developments for which the defendant was responsible.  Specifically, the contractors typically paid the defendant approximately $500 in cash for each no-bid contract that was received from the defendant.  These no-bid contracts were each worth between $5,000 and $10,000.  The contractors paid these bribes based on the understanding that if they did not pay, they would not be awarded additional no-bid contracts by the defendant for work at that housing development. (*See, e.g.*, PSR ¶¶ 20, 28).  In total, the defendant accepted a substantial number of bribes totaling approximately

$25,000 in exchange for awarding no-bid contracts with a total value of approximately $23,000. (PSR ¶ 32).

The defendant was charged by complaint in connection with this conduct in early February 2024 and was arrested on February 6, 2024. (PSR ¶ 31).

The defendant's actions were part of a widespread culture of corruption at NYCHA. (PSR ¶¶ 9-11). The Government charged 70 current and former NYCHA employees, including the defendant, with bribery and extortion offenses in a single, coordinated takedown. Although the majority of these defendants were charged separately, the charging instruments allege that these NYCHA employees received similar bribe amounts from contractors for no-bid contracts. In fact, the required bribe amount (typically between 10 or 20 percent of the contract's value) became well known among contractors because so many NYCHA employees were demanding payments for work. (*See generally* Dkt. 6 (background letter)).[1]

The impact of this corruption by former and current NYCHA employees was vast: collectively, the 70 defendants are alleged to have received more than $2 million in bribe or extortion payments from NYCHA contractors in exchange for awarding at least approximately $13 million in NYCHA contracts at approximately 96 developments in all five boroughs. (*Id.*).

## II. The Defendant's Guilty Plea and Guidelines Range

On June 12, 2024, the defendant pleaded guilty to an Information charging one count of receipt of a bribe by an agent of an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B). (PSR ¶¶ 2, 4). Specifically, the defendant was charged with soliciting and accepting a total of at least $25,000 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth at least approximately $235,000. (*See* Dkt. 14 (Information)).

As set forth in the parties' plea agreement and confirmed in the Presentence Report, the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) because he was a public official, and that level is increased by six points because the offense involved more than one bribe and the value of the bribe payments amounted to between $15,000 and $40,000. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a) and (b). A two-point reduction is also applied because the defendant has zero criminal history. Thus, the defendant's applicable offense level is 15. (PSR ¶¶ 4, 37-48).

The defendant has zero criminal history points and is therefore in Criminal History Category I. (PSR ¶¶ 4, 49-51).

Based on the above calculations, the defendant's Guidelines range is 18 to 24 months' imprisonment (the "Stipulated Guidelines Range"). (PSR ¶¶ 4, 84). At Guidelines level 15, the

---

[1] To date, 45 defendants have pleaded guilty or are scheduled to plead guilty to felony charges, and nine defendants have pleaded guilty or are scheduled to plead guilty to misdemeanor charges.

applicable fine range is $7,500 to $75,000. (PSR ¶ 91). The Probation Office recommends a sentence of time served and three years of supervised release. (PSR at 25). The defendant also requests a sentence of time served. (Def. Mem. 4-5).

The defendant has agreed to pay $25,000 in restitution to NYCHA and to forfeit $25,000 in illegal proceeds. (PSR ¶¶ 93, 95).

### III.    Discussion

#### A.    Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to
       provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant;
  (D) to provide the defendant with needed educational or vocational training, medical care,
       or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. A Sentence of Imprisonment Within the Bottom Half of the Guidelines Range Is Necessary in This Case

A sentence of imprisonment within the bottom half of the applicable Guidelines range of 18 to 24 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case. As discussed below, but for the defendant's early acceptance of responsibility and waiver of indictment and discovery, the Government would be seeking a sentence within the top half of the Guidelines range.[2]

*First*, the seriousness of the defendant's conduct and the need to promote respect for the law support imposition of a substantial sentence of imprisonment. The defendant repeatedly betrayed his employer and abused the position of public authority that he held, and ultimately betrayed the trust of the residents of the NYCHA developments for which he had responsibility, all in order to enrich himself. As a NYCHA superintendent, the defendant earned an annual salary of approximately $80,000, but the defendant nevertheless corrupted his position of authority for personal greed. (PSR ¶¶ 76, 81). And the defendant's conduct was not aberrational or a momentary lapse in judgment; he engaged in this offense on a sustained basis over a decade. And while the Government is only asserting an ability to prove that the defendant accepted bribes totaling $25,000 based on witness testimony, the defendant's financial records reflect a substantial volume of unexplained cash deposits: between June 2020 and November 2023 alone—a fraction of the ten years over which he accepted bribes—the defendant deposited more than $44,000 in cash into his bank account. (PSR ¶ 30). The presence of these unexplained cash deposits, tending to indicate a much broader course of conduct than even the $25,000 in bribes as to which the Government has secured witness testimony, belie the defendant's simultaneous attempt to accept responsibility while also claiming that he "believes but is not certain that the [total bribe] amount may have been lower." (Def. Mem. 6 n.14). Nor is it appropriate to consider that the defendant is responsible for only "1.25% of the losses suffered," (Def. Mem. 13), as that is considering conduct for which his Guidelines range is not accounting. The defendant is responsible for *100%* of the losses suffered as a result of the Guidelines calculation applicable in his case and the conduct he himself committed; his logic would apply only if the Guidelines were holding him responsible for the millions of dollars in bribes accepted by NYCHA superintendents across the Government's broader investigation.

Courts in this District have repeatedly emphasized the harm that these bribery and corruption offenses cause. For example, Judge Caproni observed in sentencing another NYCHA employee that public corruption is "one of the most serious of all federal offenses" because "[t]his

---

[2] The defendant's objection to the inclusion of statistical JSIN information in the Presentence Report (Def. Mem. 2-4) should be rejected. The JSIN data, which was gathered by the Sentencing Commission specifically for use by sentencing judges in considering the Section 3553(a) factors, is sufficiently reliable to be considered at sentencing, and district courts across the country routinely consider it as one of the many factors to be balanced in any given case. The Court is free to give those statistics as much or as little weight as it feels they deserve, but there is no basis to strike them from the Presentence Report. *See, e.g., United States v. Brewster*, -- F.4th --, 2024 WL 4157759, at *6-9 (9th Cir. Sept. 12, 2024) (affirming consideration of JSIN data at sentencing over defendant's objection based on alleged unreliability).

country cannot exist if the public does not trust that public officials are operating as servants of the people and not corruptly for their own personal gain." *United States v. Rupnarain*, No. 24 Cr. 125 (VEC), Dkt. 28 at 25 (S.D.N.Y. Aug. 5, 2024). Judge Cote, in sentencing a different NYCHA employee to 15 months' imprisonment for accepting approximately $6,000 in bribes, described the offense as "a real betrayal":

> You betrayed your employer, you betrayed the city, you betrayed the residents of the houses at which you worked. This was a corruption of your job and your duties. You were given responsibility and authority, and instead, you used that to get money you had no right to. And corruption is a corrosive, destructive issue. People need to have faith in their government. They need to have faith in their public housing that it's a community resource that can be used to support those in need."

*United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023).

As another example, Judge Oetken observed in sentencing a different NYCHA defendant to five months' imprisonment for taking $9,500 in bribes that:

> Because the conduct was so widespread within NYCHA, one might look at it, although superficially, like it was sort of routine behavior and therefore almost innocuous, but it was not innocuous or innocent, and it's important that we all understand that. It's the kind of conduct that undermines faith in our government and in institutions that are supposed to help people. It is criminal conduct that is hard to detect. It's more subtle than some others forms of criminal conduct, but there are real victims; not just NYCHA but sort of the public's faith in the government. It creates cynicism, this sort of corruption.

*United States v. Escobar*, No. 24 Cr. 213 (JPO), Dkt. 23 at 25-26 (S.D.N.Y. July 25, 2024).

And similarly, in a recent bribery case involving corrupt Drug Enforcement Administration ("DEA") officials, this Court called bribery of public officials "insidious [because] it undermines the public's faith in our system . . . . There are a lot of countries around the world where this sort of corruption is routine, it's part of life, everyone expects it. One of the things that sets our country apart, at least in our aspirations and our ideals, is to be free of this sort of corruption." *United States v. Costanzo*, No. 22 Cr. 281 (JPO), Dkt. 253 at 54 (S.D.N.Y. Apr. 24, 2024).

In addition to undermining the public's trust in NYCHA, the conduct damaged NYCHA's mission and, potentially, the wellbeing of its residents. Rather than select contractors based on the quality of their work and the price they offered, the defendant chose contractors based on his own personal greed. A sentence within the bottom half of the Stipulated Guidelines Range is needed to appropriately punish the defendant's repeated betrayal of public trust for personal gain and to promote respect for the law. *See Rupnarain*, Dkt. 28 at 26 ("I think society expects public corruption to be treated seriously and for corrupt officials to be punished.").

*Second*, a within-Guidelines sentence is vital to deter others who may seek to engage in similar schemes—a factor that would not be adequately addressed with a time-served sentence.

By charging 70 defendants with this conduct, the Government sought to send a real message that this type of behavior will not be tolerated. However, this message is likely to ring hollow if these defendants receive non-incarceratory sentences for repeated abuses of their positions of responsibility over the safety and well-being of some of the most vulnerable New Yorkers.

Prior arrests of individuals engaged in this type of bribery scheme have not ended this type of conduct. In fact, the defendant himself continued to accept bribes even after the well-publicized arrests of nine contractors who were charged with bribing NYCHA superintendents in Brooklyn in September 2021.[3] As courts in this Circuit have recognized, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." *United States v. Johnson*, No. 16 Cr. 457 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018). Many other individuals—like the defendant—hold similar positions of public trust, have the opportunity to commit similar offenses, and face similar temptations to betray their offices, and so a substantial term of imprisonment is needed to deter these individuals from making the same choices the defendant did. *Cf. United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) (discussing particular need to deter financial institution employees from breaching trust of employer by engaging in frauds). The need for deterrence is also particularly acute for crimes that are difficult to detect and punish, like bribery offenses often are. *See Rupnarain*, Dkt. 28 at 29 (noting that "these sorts of schemes are very hard to catch," and "because people know they're hard to catch, it's got to be that the punishment is sufficiently severe that people will say, I'm not going anywhere close to that because I know what happens to even good people"); *accord United States v. Zukerman*, 897 F.3d 423, 430 (2d Cir. 2018) (general deterrence considerations "argue for punishing more heavily those offenses that are either lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it"). Any sentence imposed in this case must send a message to those who seek to illegally profit from their NYCHA positions—or other positions of trust in local, state, or federal government agencies—that such conduct will not be tolerated and that serious consequences, including incarceration, will result.

*Third*, while the defendant points to his long employment history at NYCHA and his history as a law-abiding member of society in his sentencing submission, (*see* Def. Mem.), the Court should reject these characteristics as a basis for a non-incarceratory sentence. The defendant's lack of criminal history is already reflected in his Guidelines range. Not only was the defendant placed in Criminal History Category I based on his zero-point offender status, but he also received a two-point reduction in his offense level.

The defendant's history of meritorious service also does not distinguish him from any other of the 70 defendants charged with taking bribes while at NYCHA or individuals who commit bribery generally. It is precisely by virtue of a history of service that bribery defendants are generally able to obtain the position of public trust that they then, in turn, exploit and use to solicit bribes. *See United States v. Fishman*, 631 F. Supp. 2d 399, 403 (S.D.N.Y. 2009). In other words, an otherwise unblemished work history is often part and parcel of bribery and does not take the

---

[3] *See* NBC New York, "9 Contractors Charged in 'Brazen' NYCHA Kickback Scheme: Brooklyn DA" (Sept. 20, 2021), https://www.nbcnewyork.com/news/local/crime-and-courts/contractors-expected-to-be-charged-in-alleged-nycha-kickback-scheme-sources/3280939.

defendant out of the heartland of bribery offenses or defendants. In fact, it is precisely what is so concerning about the defendant's conduct: by virtue of his prior employment and service, he was entrusted with a position of privilege and responsibility and chose to betray that position on multiple occasions by using it to his own advantage. The Court should not grant leniency based on the same history of service that laid the foundation for the defendant's crimes.

*Fourth*, the Government submits that a sentence within the bottom half of the applicable Guidelines range is appropriate considering relative culpability and the sentences that have been imposed in this District on other NYCHA employees who pleaded guilty to accepting bribes in exchange for awarding no-bid repair contracts. A chart of the applicable Guidelines ranges and sentenced imposed on the defendants sentenced so far is attached hereto as Exhibit A. Indeed, the need to avoid unwarranted sentencing disparities weighs heavily in favor of imposing a substantial incarceratory sentence. *See, e.g.*, *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (explaining that this factor refers to comparing defendant to defendants in other cases who are similarly situated and committed similar offenses). All but two of the defendants convicted of felonies have received substantial sentences of imprisonment, and the two defendants who did not had unique mitigating factors not present here. Indeed, in sentencing a later defendant to a term of imprisonment, Chief Judge Swain distinguished the sentence she imposed on Tara Lucas (with whom the defendant here urges a direct comparison) as having been based on that defendant's unique mitigating factors. *See United States v. Hopkins*, No. 24 Cr. 201 (LTS) (S.D.N.Y. Sept. 16, 2024).

The defendant's argument that he is the primary caregiver for his son (*see generally* Def. Mem.) is not a sufficient basis to impose a non-incarceratory sentence. The defendant's son is 17 years old and is currently a senior in high school. (PSR ¶¶ 60, 63). Insofar as the defendant's son is recovering from a recent medical procedure, the Government has no objection to a delayed surrender date, but this is not a case in which young children would be sent to foster care in the absence of the only possible caregiver. The defendant has failed to demonstrate that there are truly no other possible caregivers for his son.

Each of these factors weighs in favor of a substantial sentence of imprisonment that would, but for the defendant's early acceptance of responsibility, lead the Government to request a sentence within the top half of the applicable Guidelines range. In this case, however, the Government believes that it is appropriate to acknowledge, under Section 3553(a), that the defendant accepted full responsibility for his conduct unusually early. Relatively soon after his arrest, the defendant waived indictment, waived discovery, and pled guilty to an Information. In the context of a 70-defendant case, this early acceptance is meaningful and saved the Government substantial resources in connection with grand jury practice, discovery, and general case management above and beyond what is applicable in a typical case. The Government acknowledges that the defendant's early acceptance warrants a modest downward adjustment from what the Government would otherwise be requesting. But the Government sees no other unique mitigating circumstances here that would take this case outside the heartland of cases that the Sentencing Guidelines were intended to address. Accordingly, the Government submits that a sentence of imprisonment within the bottom half of the Guidelines range is warranted here.

### IV. Conclusion

For the reasons set forth above, the Court should impose a sentence of imprisonment within the bottom half of the applicable Guidelines range of 18 to 24 months' imprisonment, as well as the agreed-upon restitution and forfeiture.[4,5]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Jerry Fang / Jacob R. Fiddelman / Meredith Foster /
Catherine Ghosh / Sheb Swett
Assistant United States Attorneys
(212) 637-2584/-1024/-2310/-1114/-6522

cc:   Judith Vargas, Esq.

---

[4] To the extent that the Court is inclined to sentence the defendant to a non-incarceratory sentence, the Government requests that the Court sentence the defendant to probation instead of supervised release.

[5] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).